# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 05 CR 41 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| SHAMSIDEEN SOKOYA, | ) | |

## MEMORANDUM AND ORDER

Defendant Shamsideen Sokoya entered a blind plea of guilty to one count of distributing more than 100 grams of heroin. *See* 21 U.S.C. § 841(a)(1). In his plea statement, Sokoya admitted selling 350 grams of heroin to a confidential government informant on January 7, 2005. Sokoya is presently before the court for sentencing.

### I. Sentencing Guideline Calculation

In her presentence investigation report, Sokoya's probation officer set forth the following calculations under the 2006 Sentencing Guidelines. Sokoya's base offense level (and adjusted offense level) is 26 based upon his delivery of between 100 and 400 grams of heroin. *See* U.S.S.G. § 2D1.1(c)(7). From that, the probation officer subtracted two levels for acceptance of responsibility, but did not credit him with the additional level for timely notifying the government of his intention to plead guilty because Sokoya did not do so until the morning of his trial. The resulting total offense level is 24. Sokoya has no criminal history, so his sentencing range based upon an offense level of 24 and a criminal history category of I is 51 to 63 months. However, by statute Sokoya is subject to a minimum term of imprisonment of 60 months, so his actual sentencing range is 60-63 months. He is not eligible for probation by statute. *See* 18 U.S.C. § 841(b)(1)(B). He is also ineligible for probation because his guideline range is in zone D. *See* U.S.S.G. 5B1.1, comment. (n.2).

In his sentencing memorandum, Sokoya argues in favor of two adjustments to his offense level that the probation officer did not address: (1) a two-level reduction under the safety valve provision, *see* U.S.S.G. § 5C1.2; and (2) a two-level reduction for being a minor participant, *see* U.S.S.G. § 3B1.2(b). At sentencing, the government argued against application of the safety valve provision and, because Sokoya has been less than forthright about the circumstances surrounding the instant offense, asked that he be denied the two-level credit he received under the probation officer's calculation for acceptance of responsibility, *see* U.S.S.G. § 3E1.1.

*Safety Valve Relief*

Sokoya contends that he is entitled to safety valve relief under U.S.S.G. § 5C1.2 because (1) he has no criminal history points, (2) his crime did not involve threats or firearms, (3) his crime did not result in death or serious bodily injury, (4) he was not an organizer or leader, and (5) he has provided all the pertinent information he has to the government. If he qualifies for safety-valve relief, Sokoya would escape the effect of the minimum 60-month sentence and would be entitled to an additional two-level reduction under U.S.S.G. § 2D1.1(b)(7).

In its version of events, the government agrees that Sokoya meets the first four criteria for safety valve relief. However, the government and Sokoya disagree whether he met the final requirement that he provide all pertinent information to the government. Sokoya admittedly did not offer much information during his proffer, except that he obtained the heroin for the confidential informant only because the informant repeatedly pleaded for his help. According to Sokoya, he finally gave in to the informant's pleas because he felt sorry for him, and obtained the heroin from a single source with no expectation of being paid for his services. Sokoya contends that his lack of useful information to provide to the government should not be held against him

because the "fact the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." Sokoya Sentencing Memorandum at 3-4.

At sentencing, the government presented as a witness Justin Williams, the special agent who investigated Sokoya. Williams testified that Sokoya knew much more than he let on during his March 27, 2007, proffer. For instance, Williams testified about recorded telephone conversations between Sokoya and a confidential informant for the government during which Sokoya asked about his compensation for facilitating the heroin sale. Specifically, according to transcripts of the conversation, he asked:

| | |
|---|---|
| Sokoya: | What is in it for me? What are you going to add for my own gain? |
| Informant: | I am going to add 250 each for your gain. |
| Sokoya: | Ehn. |
| Informant: | 250 each will be your own gain. 250. 250 - - - 250. |
| Sokoya: | I understand. |
| Informant: | Ehn. |
| Sokoya: | [unintelligible]. Can't you pay more than that? |
| Informant: | Big brother, I cannot pass 300. You heard. |

Government's Exhibits for Sentencing at 14. According to Williams, Sokoya negotiated not only his compensation, but also the sales price for the heroin:

| | |
|---|---|
| Informant: | Can you reduce the price for me? |
| . . . | |

| | | |
|---|---|---|
| Sokoya: | | Aha. Aha. How much were you expect[ing] it to be? |
| Informant: | | [unintelligible]. Can you reduce the price for me? |
| Sokoya: | | Aha. Aha. |
| Informant: | | I am just asking you. So. |
| Sokoya: | | You know - - - I don't know what you are talking about anyway. |

. . .

| | | |
|---|---|---|
| Informant: | | [unintelligible]. Can you do it for me? |
| Sokoya: | | [unintelligible]. I was even going to ask you to increase it. |

*Id.* at 4-5.

Agent Williams also referenced passages from the transcript in which Sokoya allegedly discussed obtaining the heroin from multiple sources:

| | | |
|---|---|---|
| Sokoya: | | [unintelligible]. When you called me, I called both of them. |
| Informant: | | Ehn. |
| Sokoya: | | When you called now, both of them called me to let me know it is ready. That I should start coming - - - that I should start coming. |
| Informant: | | Don't do like that - - - it is where you went first. |
| Sokoya: | | Ehn? |
| Informant: | | You have to keep going. You should go to the first person. |

*Id.* at 35. Finally Williams testified that, according to the transcripts, Sokoya obtained the heroin from at least one of his sources upfront without being required to pay for it first. Williams testified that Sokoya could not have been a novice drug dealer as he has claimed because no supplier would have ever given him heroin upfront without first requiring payment.

The court has carefully taken into account Williams' testimony and carefully reviewed the transcripts of the recorded conversations. It has also carefully taken into account Sokoya's testimony at the sentencing hearing during which he offered innocent explanations about the transcribed conversations, including that he was not negotiating a heroin transaction but rather was discussing negotiating the sales price of a Toyota Camry. Based upon its review of the testimony and the transcripts, the court finds the government's position more credible than Sokoya's. First, Williams is a seasoned drug agent and based his interpretation of Sokoya's transcribed conversations on his years of experience investigating drug dealers and drug transactions. Therefore, the court attributes much weight to Williams interpretation of Sokoya's recorded conversations.

Second, although the transcription contains unintelligible sections and heroin is never mentioned by name, the court is nevertheless convinced that Sokoya is negotiating the price of the heroin and his commission, as well as discussing obtaining the heroin from multiple sources. The court's belief is based upon the fact that Sokoya admits delivering heroin to the confidential informant and that the conversations were recorded close in time to the heroin delivery.

Finally, based upon its observation of Sokoya's demeanor during his sentencing hearing, the court did not find Sokoya's testimony to be credible. Given Sokoya's lack of credibility and the fact that nothing in the transcript could reasonably be viewed to be a discussion about negotiating the price of a car, the court does not believe that Sokoya was merely discussing a Toyota Camry.

Therefore, the court does not believe that Sokoya was forthright during his proffer during which, by his own account, he told the government that he delivered the heroin to the

confidential informant out of pity and without financial reward. As a result, Sokoya is not entitled to a two-level reduction in his base offense level under U.S.S.G. § 2D1.1(b)(7), and is subject to the statutory minimum sentence of 60 months.

*Acceptance of Responsibility*

Based upon Sokoya's failure to be forthright about the circumstances surrounding the instant offense, the government at sentencing objected to crediting Sokoya with a two-level credit for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. To qualify for the credit, a criminal defendant must "truthfully admit[] the conduct comprising the offense(s) of conviction, and truthfully admit[] or not falsely deny[] any additional relevant conduct for which the defendant is accountable under § 1B1.3." Under § 1B1.3, a defendant is accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, or preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Sokoya has not truthfully admitted relevant circumstances surrounding his offense. Therefore, even though Sokoya pleaded guilty, the court agrees with the government that he is not entitled to an adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 comment. (n.3) ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). As a result, Sokoya's total offense level is 26 (as opposed to 24 calculated by the probation officer). Combined with his criminal history category of I, Sokoya's revised sentencing range is 63-78 months.

*Minor Participant Reduction*

Sokoya argues that he is entitled to a two-level reduction as a minor participant. *See* U.S.S.G. § 3B1.2(b). In support, Sokoya contends that the confidential source approached him, that Sokoya initially refused to get involved, and that he finally agreed to only after continuing requests from the confidential source. As a result, Sokoya argues that compared to the confidential source, he was a minor participant because "important variables were all determined by someone other than Shamsideen Sokoya."

Sokoya's argument is unavailing. The minor participant reduction is available only if the offense involved multiple participants. *See* U.S.S.G. § 3B1.2, comment. (n.2). A participant is a person criminally responsible for the commission of the offense. *See* U.S.S.G. § 3B1.1, comment. (n.1). According to the government's version of events, the confidential source in this case was acting under the direction of the government. Therefore, this offense did not involve multiple participants, and therefore Sokoya cannot be considered a minor participant.

Although Sokoya did not identify his supplier as a participant, to the extent the supplier could be considered a participant, Sokoya has not set forth what the supplier's role in the offense was. Therefore, Sokoya has failed to provide any basis for concluding that, as compared to the supplier, Sokoya was a minor participant.

Therefore, Sokoya is not entitled to a two-level reduction as a minor participant under U.S.S.G. § 3B1.2(b).

## II. Application of the Factors Set Forth in 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are:

(1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

(2) to create adequate deterrence to crimes by others;

(3) to protect the public from future crimes by the defendant; and

(4) to provide the defendant with necessary treatment and training.

See 18 U.S.C. § 3553(a)(2). To those ends, the court must take into account the following factors:

(1) the nature and circumstances of the offense;

(2) the history and characteristics of the defendant;

(3) the kinds of sentences available;

(4) the sentencing range calculated under the Sentencing Guidelines;

(5) pertinent policy statements set forth in the Sentencing Guidelines;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records or who committed similar crimes; and

(7) the need to provide restitution to victims of the defendant's offense.

See 18 U.S.C. § 3553(a)(1-7).

Sokoya identifies the following facts and circumstances that he contends favor a sentence of time served, approximately 28 months. However, because the court has already determined that he is not eligible for safety valve relief, Sokoya is subject to a minimum 60 month term of incarceration. Therefore, the court will take the following circumstances into account as factors favoring a sentence near the low end or slightly below his sentencing range of 63-78 months:

- he is college-educated, has been steadily-employed most of his life, and is a practicing Muslim;

- he has not been previously incarcerated, and so a lesser period of imprisonment is needed to deter him from committing more crimes;

- he has enrolled in many education programs available at the institutions where he has been held including classes on becoming a paralegal, and has even helped organize programs on real estate, business formation, stock trading, and business management;

- he was essentially entrapped by the confidential source, so he is less culpable;

- he faces deportation after the completion of his sentence, where he expects to face additional punishment; and

- Sokoya was subjected to substandard conditions at the Kankakee County Jail where he had limited access to medical treatment and to visitors.

The court will address each of Sokoya's reasons for a lower sentence by grouping them into general categories.

*Education and Employment*

Sokoya contends that his education and steady employment make him less likely to become a recidivist. Family members have also written a number of letters attesting to Sokoya's good character. Although his education, employment, and reputation among family members attest to his good character, these characteristics did not prevent him from committing the instant offense. The court therefore has no reason to conclude that these same characteristics will prevent Sokoya from committing additional offenses.

*Lack of Criminal History*

Sokoya's lack of criminal history has already been taken into account by the Sentencing Guidelines, which impose a lower sentence on criminals with no criminal history. Accordingly, the court does not believe that Sokoya is entitled to any additional break on his sentence based upon his lack of criminal history.

*Conditions of Pre-trial Confinement*

Sokoya contends that he is entitled to a lower sentence based upon the conditions of his pre-trial confinement, including the conditions at the state facility in Kankakee where access to medical care and visitors is limited. The Seventh Circuit has never definitively determined whether conditions of pretrial confinement may be taken into account when crafting an appropriate sentence. *See United States v. Cardenas*, No. 02-3566, 2003 WL 21461824, at *1 (7th Cir. June 18, 2003) ("This circuit has not yet decided whether conditions of pretrial confinement can even be an acceptable basis for a downward departure."). However, even if pretrial conditions are a basis for imposing a lower sentence, the court does not believe that the conditions Sokoya describes would warrant such a break.

On numerous occasions, the court worked with the defendant, his counsel, and representatives from the United States Marshals' office and the Bureau of Prisons to deal with each of Sokoya's complaints that his medical needs were not being met at Kanakaee. The ultimate result was that Sokoya was transferred to the Metropolitan Correctional Center (and apparently a resident of the MCC was transferred to Kankakee to make room for Sokoya). Accordingly, to the extent Sokoya suffered while at Kankakee, the court has already addressed the issue.

Furthermore, this court has so far not taken into account the conditions at Kankakee when determining an appropriate sentence, and the conditions that Sokoya has described are no worse than the conditions other defendants have described.

*Deportation*

Sokoya argues that he should receive a lower sentence because, upon completion of his sentence, he will be deported and will face "additional penalties" upon his return to Nigeria. This basis for a lower sentence should be rejected for two reasons. First, he has not identified what "additional penalties" he faces. Although his counsel made passing reference at sentencing to a United Nations Commission report that sets forth the additional penalties Sokoya faces, he did not name the report or provide the court with a copy or citation or any other evidence to support his argument. Second, giving Sokoya a break on his sentence on this basis would result in deportable aliens receiving shorter sentences than citizens. *See United States v. Guzman*, 236 F.3d 830, 833-34 (7th Cir. 2001) (rejecting "double punishment" argument because implication that aliens who commit crimes should receive shorter sentences is nonsensical).

*Imperfect Entrapment*

Sokoya acknowledges that under the circumstances of his case, entrapment would not be a defense to his crime. Nevertheless, he contends that it is a basis for imposing a lower sentence upon him. Sokoya cites no authority in support, but the argument appears rooted in a policy statement on coercion in the Sentencing Guidelines. *See* U.S.S.G. § 5K2.12, p.s. Although Sokoya has not cited a Seventh Circuit case detailing an "imperfect entrapment" departure, the Second Circuit has described it as a departure based on "conduct by the government that does not give rise to an entrapment defense but that is nonetheless aggressive encouragement of wrongdoing." *See United States v. Bala*, 236 F.3d 87, 92 (2d Cir. 2000) (internal quotes omitted). In *Bala*, the Second Circuit stated that the imperfect entrapment departure has no

express basis in the Guidelines, but "the policy statement in Section 5K2.12 can reasonably be read to authorize such a departure in appropriate cases."

Of course, post-*Booker* Sokoya's request for a departure under the Guidelines is outmoded and instead is relevant under an application of the § 3553(a) factors. However, even under the Guidelines, a lower sentence based upon coercion is available only if the coercion "involves a threat of physical injury, substantial damages to property or similar injury." *See* U.S.S.G. § 5K2.12. Sokoya has alleged no such conduct. Therefore, he has not provided the court with a basis for applying § 5K2.12.

*Rehabilitation*

Sokoya has apparently made the best of his period of incarceration by completing numerous classes, and has even helped organize some additional classes. This is a characteristic of Sokoya that would favor a sentence at the low-end of his guideline range.

*Nature of the Offense*

Although Sokoya has attempted to better himself during his incarceration, the court must also take into account the nature of his offense, specifically, his sale of heroin. Drugs are the scourge of society, and heroin is among the deadliest of all drugs. Without regard to the lives, families, and neighborhoods torn apart by drugs, Sokoya facilitated the introduction of even more heroin into the community, all for a quick buck. The nature of Sokoya's offense therefore weighs heavily in favor of a very serious sentencing.

## III. Conclusion

On balance, the factors set forth under § 3553(a) favor a sentence within Sokoya's Guideline range. Most of the factors do not favor imposing a sentence below his range. One

factor favors a sentence at the low-end of his range based upon his work toward rehabilitation, but that must be balanced against the nature of Sokoya's offense that heavily favors a very serious sentence.

Accordingly, the court sentences Sokoya to a term of incarceration of 63 months. The court believes, in its discretion, that a 63 month sentence fully takes into account all of the factors under § 3553(a) and is a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

ENTER:

DATE: November 20, 2007

_____
Blanche M. Manning
United States District Judge